CRAMER v. COE, Com'r of Patents.
No. 6822.

United States Court of Appeals for the District of Columbia.

Decided Jan. 10, 1938.

Rehearing Denied Feb. 16, 1938.

E. W. Shepard, of Washington, D. C., and John E. Jackson, of Pittsburgh, Pa., for appellant.

R. F. Whitehead, Sol. of Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the District Court dismissing appellant's bill, filed under section 4915, Rev.St., as amended, 35 U.S. C.A. § 63, seeking to authorize the issuance of a patent on his application, which relates to a method of treating steel rods and wire.

Of the five claims, No. 3 is here reproduced as representative: "The method of treating rods and wire to remove brittleness caused by occluded hydrogen which consists in enclosing the rods or wire in a chamber, recirculating air in said chamber, and passing said air over a heater during its recirculation to heat said air to temperatures above 212 degrees Fahrenheit and maintain it at approximately said temperatures."

After hot working, such as rolling, and after annealing, steel rods and wire are covered with a coating of oxides, known as "scale." To remove this, the metal is subjected to a solution of acid. The reaction of the metal with the acid produces an evolution of hydrogen, some of which penetrates the metal, causing brittleness. To

116

overcome this condition, appellant coats the rods with lime and then heats the coated rods in a hot air furnace at not less than 212° F. The air is maintained hot by recirculating it.

There is no dispute as to the facts. It is agreed that appellant's distinction over the prior art resides solely in the use of a recirculating air drier which keeps the temperature uniform. All other features of the method are old. In the opinion of the Primary Examiner, he said: "The only new results in the method are set out as due to uniform instead of erratic heating." The Board in its opinion stated: "The object of the present invention is to remove the occluded hydrogen and dry the rods after passing through the acid treatment. The rods are coated with lime and then placed in a hot air drying or baking furnace. Hot air is constantly recirculated through the furnace and over a heater so as to keep the air constantly moving over the rods. This results in the drying of the rods and in the removal of the occluded hydrogen."

In the prior art the air remains in a static condition, as it is not circulated. According to the Board: "In applicant's process the heated air is circulated so that it comes into contact with all parts of the rods and the hydrogen is uniformly removed from the entire surface portion of the rods. The operation is also speeded up because the air is circulated."

The Patent Office and the court below relied on the patent to Cantoni (No. 1,611,-632, December 21, 1926) as an anticipation of appellant's method. We will therefore somewhat critically examine that patent. Its object, as stated in the specification, "is to produce a drier which will be so formed as to deliver the hot air to the fruit or vegetables at a time when the materials can best withstand the greatest heat * * *. It will be understood by those skilled in the art that in the earliest stages of the drying, the temperature must not be too high, but that during an intermediate stage of the drying, the temperature can be consid-erably higher without injuring the fruits or vegetables, but that during the latter stages of the drying, the temperature must be again somewhat lower, so that in the present instance, the drying chambers are so arranged as to have the fruit move from the cooler end of the drier to the hotter end, and then to have the cars containing the trays turned round and moved in another channel away from the hottest part of the drier to the cooler portion thereof until the end of the treatment. A further object of the invention is to provide means whereby the movement of the cars along the drying tracks and on to the turn table and out of the drier, will be accomplished by the mere operation of a power driven cable."

It thus appears that Cantoni's problem was quite different from appellant's. There is a wide difference between the two. We are of the opinion that Cantoni's "apparatus for drying fruits and vegetables" is not an anticipation of appellant's "method of treating rods and wire." In Cantoni the drying chambers are so arranged as to permit the movement of the fruit or vegetables from the cooler end of the drier to the hotter end. Such a method could not be used for baking rods or wire. For Cantoni to employ appellant's method would be to bake and spoil the fruit or vegetables. For appellant to employ Cantoni's method would be a waste of time.

In our view appellant has made a distinct contribution to the art and, inasmuch as his claims are limited, we think his efforts should be recognized. Lucke v. Coe, 63 App.D.C. 61, 69 F.2d 379.

Decree reversed.

Chief Justice MARTIN retired prior to the opinion and decision in this case and took no part therein.

Justice VAN ORSDEL died prior to this decision.

Reversed.